UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DIANA LYNN MAY, | Case No. 3:11-cv-00013-HA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER of Social Security, | |
| Defendant. | |

HAGGERTY, District Judge:

      Plaintiff Diana May seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB). This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is reversed and remanded for further proceedings.

**STANDARDS**

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for DIB. 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four to establish his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show that jobs exist in a significant number in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits. 20 C.F.R. §§ 404.1520(f)(1), 416.920(a). If the Commissioner meets this burden, the claimant is deemed to be not disabled for purposes of determining benefits eligibility. *Id.*

The Commissioner's decision must be affirmed if it is based on the proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).

When reviewing the decision, the court must weigh all of the evidence, whether it

OPINION AND ORDER- 2

supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome. *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998). If, however, the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision, the decision must be set aside. *Id.* at 720.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for DIB on May 24, 2006. She alleges disability based on several impairments including: fibromyalgia, depression, personality disorders, post-traumatic stress disorder (PTSD), and Somatization disorder. Plaintiff was twenty-nine at the onset of her alleged disability and thirty-one at the time of filing. She was last insured on June 30, 2006. Her application was denied initially and on reconsideration.

An Administrative Law Judge (ALJ) conducted hearings on May 5, 2009 and on September 8, 2009. The ALJ heard testimony from the plaintiff, who was represented by counsel, and an independent vocational expert (VE). On September 29, 2009, the ALJ issued a decision finding plaintiff not disabled as defined in the Social Security Act (SSA). The ALJ found that plaintiff suffered from asthma, obesity, bilateral knee pain, depression, a personality disorder, and Somatization disorder. Tr. 25, Finding 3.[1] Although the record indicates that plaintiff was also diagnosed with fibromyalgia in April, 2005, the ALJ found the medical evidence to be insufficient to establish that diagnosis as a severe impairment. Tr. 26, Finding 3. The ALJ found that plaintiff's impairments, singly or in combination, did not meet or equal a

---

[1] Tr. refers to the Transcript of the Administrative Record.

OPINION AND ORDER- 3

listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 26-27, Finding 4. Thus, the ALJ needed to determine plaintiff's RFC.

After reviewing the record, the ALJ found that plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and required a position that allowed for postural changes at will, limited public contact, provided a predictable routine pace, and did not expose plaintiff to environmental irritants such as dust or fumes. Tr. 27, Finding 5. The ALJ further determined that plaintiff was able to lift twenty pounds occasionally and ten pounds frequently, sit six out of eight hours, and stand/walk four out of eight hours. *Id.* Based on plaintiff's RFC and testimony by the VE, the ALJ determined that plaintiff was capable of performing past relevant work as a surveillance system monitor. Tr. 35, Finding 6. The ALJ found that plaintiff was also capable of performing work as a small products assembler, a position with approximately 298,000 opportunities nationally, and 3,000 opportunities regionally. Tr. 36, Finding 6. Therefore, the ALJ found that plaintiff was not disabled as defined in the SSA. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff then initiated this action seeking judicial review.

## DISCUSSION

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for further findings or an award of benefits based on several alleged errors in the ALJ's decision: (1) failing to find fibromyalgia is a severe impairment; (2) improperly rejecting plaintiff's testimony; (3) improperly rejecting the opinions of plaintiff's doctors; (4) improperly rejecting the lay witness statements; (5) improperly classifying plaintiff's past relevant work; and (6) formulating an invalid vocational hypothetical.

OPINION AND ORDER- 4

### 1. Plaintiff's Fibromyalgia

The plaintiff argues that the ALJ erred in failing to find her diagnosed fibromyalgia as a severe impairment. In his decision, the ALJ noted that plaintiff had been diagnosed with fibromyalgia, but maintained that the evidence was not strong enough to establish fibromyalgia as a severe physical impairment. Tr. 26. Consequently, the ALJ gave the opinions of plaintiff's treating physicians little weight as to the matter of plaintiff's alleged fibromyalgia. *Id.*

An impairment may be construed as non-severe only if the evidence establishes that it "has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citation omitted). If the ALJ cannot clearly determine the effect of the impairment on the claimant's ability to complete work activities, then the evaluation should not end at the step two finding of a non-severe impairment. *Id.* at 687. Even when a plaintiff is represented by counsel, the ALJ has a duty to "fully and fairly develop the record and to assure that claimants interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ's duty may also involve further inquiry of a plaintiff's physicians in order to fully develop the record regarding the basis of those physicians' opinions. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). However, if the ALJ finds the impairment to be non-severe based on "clearly established medical evidence," and substantial evidence supports that conclusion, the reviewing court should not disturb the finding. *Id.*

Here, the plaintiff's symptoms and diagnosis of fibromyalgia were well documented in the reports of both Drs. Priscilla Butler and William Melcher. Tr. 299, 300, 348, 352. Plaintiff's response to fibromyalgia trigger points was reported several times in the medical records, and Dr. Butler noted that her fibromyalgia pain appeared to be "out of control." Tr. 323. In his

OPINION AND ORDER- 5

examination of the plaintiff, Dr. Melcher noted that there was a response to "tender points about the neck, trapezii, medial scapulae, lower back, greater tronchanters, anserine bursae, and medical malleli." Tr. 352; *see also* Tr. 300 (noting "marked pain response to fibromyalgia trigger points"). The ALJ acknowledged the diagnosis but accorded little weight to the doctors' opinions because the reports failed to include any palpation exam demonstrating the exact number of trigger points that elicited a response from plaintiff. Tr. 26. As the ALJ's decision appears to be based solely on the absence of a specified number of fibromyalgia trigger points in plaintiff's medical record – information that could be easily ascertained from further inquires of plaintiff's doctors – this court finds that the ALJ's designation of the plaintiff's fibromyalgia as non-severe is not supported by substantial evidence. Because proper consideration of plaintiff's alleged fibromyalgia could result in a different RFC, the ALJ's error was not harmless.

### 2. Rejection of Plaintiff's Testimony

The plaintiff contends that the ALJ improperly rejected her subjective pain complaints and her description of her functional limitations. A claimant bears the initial burden of producing objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted). If the claimant meets this threshold, and there is no affirmative evidence of malingering, then "the ALJ may reject the claimant's testimony about the severity of his or her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*; *see also* Social Security Ruling (SSR) 96-7p ("[The ALJ's decision] must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").

OPINION AND ORDER- 6

An ALJ may weigh a claimant's credibility using ordinary techniques of credibility evaluation, including the claimant's reputation for lying, inadequately explained failures to seek treatment or to follow a prescribed course of treatment, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid. *Smolen*, 80 F.3d at 1284. A claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence. 20 C.F.R.§ 404.1529(c)(2). However, if the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but found the plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms to be only partially credible. Tr. 28. Because the ALJ cited no evidence of malingering, he had to provide clear and convincing reasons for discounting plaintiff's testimony. This court finds that the ALJ's determination of credibility is supported by the record.

The ALJ used several factors in his evaluation of plaintiff's credibility, including: the level of functioning suggested by plaintiff's daily activities versus her application and testimony; her use of public transportation; her use of a cell phone and lap top; her interest in science fiction novels, needle point, crafts, and watching television and movies; her Wiccan spiritual orientation; her ability to shop for aroma therapy items, books, and craft supplies; and her ability to do household chores. Tr. 29. Furthermore, the ALJ found the plaintiff's record to be "devoid of objective medical evidence to explain the physical etiology for the pain she described during the relevant time period." *Id.* In making his decision, the ALJ considered plaintiff's statement to

OPINION AND ORDER- 7

Dr. Bryan that she had not looked for employment since losing her last job because "she believed she would not pass drug screening," as well as Dr. Melcher's observations of plaintiff's learned chronic pain behaviors, expressed interest in social security disability, and poor motivation or insight into appropriate treatments. *Id.* The ALJ paid special attention to Dr. Melcher's note that plaintiff "kept coming back over and over again to using chronic narcotics" and "admits that she has been using her husband's narcotics." Tr. 251.

An ALJ may reject a claimant's symptom testimony if the claimant is able to perform household chores or other activities that are transferable to a work setting. *Smolen*, 80 F.3d at 1284. The ALJ must consider that "many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Id.* The ALJ noted that plaintiff reported a need to rest frequently while performing household chores or while walking. Tr. 63. Because plaintiff must take periodic breaks due to chronic pain, her ability to perform home activities does not establish an ability to work or provide a sufficient basis for discrediting her testimony.

However, the ALJ also noted that plaintiff's hobbies conflicted with her reported level of functioning. Plaintiff reported going to dinner and a movie with her husband once or twice a month. Tr. 160. This practice directly conflicts with her alleged inability to sit for more than an hour without needing to rest. Tr. 29. Similarly, her enjoyment of science fiction novels contradicts her alleged difficulties with concentration and memory, and her enjoyment of needlepoint and crafting conflict with reports of constant, severe pain in her hands. *Id.* While the ALJ's discussion of plaintiff's Wiccan religious orientation and her ability to ride the bus and use a cell phone does not provide a legitimate basis to discredit the plaintiff, the ALJ was correct

OPINION AND ORDER- 8

in considering Dr. Melcher's observation of plaintiff's expressed interest in receiving disability insurance benefits and her possible reliance on narcotic medications. *See Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992); *Lewis v. Apfel*, 220 Fed. Appx. 545, 548 (9th Cir. 2007); Tr. 62-63. The court finds this information sufficient to support the ALJ's rejection of plaintiff's testimony.

### 2. Rejection of medical opinions

Plaintiff next contends that the ALJ did not give appropriate weight to Dr. Bryan's mental examination report that the plaintiff had "marked" limitations in responding to work situations and changes in routine– a limitation that, based on the VE's testimony in the September 8, 2009 hearing, could render plaintiff unemployable. Tr. 69, 579. Plaintiff similarly contends that the ALJ incorrectly rejected the opinion of Dr. Butler regarding plaintiff's symptoms and limited physical ability.

In determining the physical impairments of a plaintiff, the ALJ is required to "fairly develop the record and assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288. An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician and such reasons must be supported by substantial evidence in the record. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). An ALJ is permitted to disregard the opinion of an examining physician when the medical reports are based on subjective complaints by the plaintiff and are not supported by clinical findings. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001).

Here, Dr. Bryan stated that plaintiff had several "employable assets" in terms of

OPINION AND ORDER- 9

intelligence, education, and social interaction abilities, but noted that her Somatization disorder tended to result in an inability to cope with stress. Tr. 575. Doctor Bryan thus indicated on plaintiff's examination form that she had a "marked" impairment in responding appropriately to usual work situations and to changes in a routine work setting. Tr. 579. The doctor further noted that the plaintiff demonstrated histrionic and borderline personality tendencies. *Id.* The doctor's report stated that it was "unclear to what extent plaintiff's Somatization and personality disorder may be fully disabling her regarding employability." Tr. 575. The ALJ stated in his decision that Dr. Bryan's opinion was given limited weight due to the doctor's inability to specify the disabling effects of plaintiff's mental impairments. Tr. 34.

Doctor Bryan's inability to specify exactly the effects of plaintiff's mental difficulties does not constitute a "clear and convincing" reason for the rejection of his findings. However, as the doctor's opinion on plaintiff's workplace limitations was based almost entirely on plaintiff's own subjective reports, and the plaintiff's testimony has been property discredited, the ALJ was not required to accept Dr. Bryan's medical reports as uncontroverted. Therefore, the ALJ's rejected of Dr. Bryan's opinion was proper.

Conversely, the ALJ's rejection of Dr. Butler's opinion was in err. The ALJ found that Dr. Butler's opinion "lacks specificity or any basis of description." Tr. 31. Doctor Butler recorded that plaintiff had a "marked pain response to fibromyalgia trigger points" and that her pain had increased over the course of several months. Tr. 300, 373. Doctor Butler's medical reports include not only plaintiff's subjective complaints of pain, but also the doctor's own observations of plaintiff's reaction to numerous medications and treatments, plaintiff's physical abilities, and plaintiff's behavior during the fibromyalgia therapy classes. Tr. 307, 320, 323, 325,

OPINION AND ORDER- 10

327. Plaintiff's medical records show that she began to see Dr. Butler for symptoms of pain in January 2004. Tr. 383. Thus, Dr. Butler had a chance to diagnose, treat, and observe plaintiff for several years prior to plaintiff's application for DIB (May 24, 2006) and last date insured (June 30, 2006). This court does not find the ALJ's reason for rejecting the testimony of Dr. Butler to be clear and convincing.

### 4. Rejection of lay witness statements

Plaintiff also claims that the ALJ improperly rejected the witness statements of her husband, Christopher Zumwalt, and her house mate, John Miller. The ALJ stated that Zumwalt's opinion was given only limited weight because Zumwalt "lacks the expertise and possibly the motivation to offer an objective or functional assessment" and "there are also issues of secondary gain". Tr. 31. In regards to Miller's opinion, the ALJ stated that it was unclear whether Miller's observations occurred prior to the relevant time period and the ALJ surmised that Miller was motivated to assist plaintiff. *Id.*

Here, the ALJ failed to provide a valid reason for rejecting either Zumwalt's or Miller's testimony. Lay witnesses are by their very definition not medical experts and cannot provide an "objective medical basis" for observations they make. Nevertheless, a lay witness's testimony is competent evidence that the ALJ must consider. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Lay witness testimony is valuable because lay witnesses are in a position to observe a claimant regularly and provide insight into how the claimant's impairments affect activities of daily living. There is nothing in the record to suggest that either witness's testimony was unduly motivated by a desire for secondary gain. The mere fact that Zumwalt is plaintiff's husband and might benefit if plaintiff were to receive disability benefits does not constitute a valid or germane

OPINION AND ORDER- 11

reason for rejecting his testimony. A claimant's spouse and immediate family members are in a unique position to describe the effects of a claimant's impairments on their day to day life. Under this ALJ's reasoning, such family members would never be found credible. Unless there is specific evidence that a lay witness is lying and is doing so out of a desire for pecuniary gain, a mere familial relationship does not constitute a valid reason for discrediting a lay witness's testimony.

Similarly, there is no evidence that Miller lied or altered his opinion to benefit plaintiff. Also, the ALJ's concern that Miller did not observe plaintiff during the relevant time period is inconsistent with the facts. Miller's testimony suggests that he moved into plaintiff's house in "early 2006." Tr. 217. Plaintiff was insured through June 30, 2006, indicating that Miller did have a chance to observe the plaintiff during the relevant time period.

### 5. Plaintiff's past relevant work

Plaintiff argues that the ALJ mis-classified her past relevant work as "surveillance system monitor" when in fact her position was as a "security dispatcher." In the dictionary of occupational titles (DOT) the position of security dispatcher is not listed. In the hearing on September 9, 2009 the VE testified that the closest position to "security dispatcher" is "surveillance system monitor" and that plaintiff's limited abilities would allow her to perform work as a surveillance system monitor. Tr. 66. Plaintiff argues that the ALJ's decision defined her job as security dispatcher only by the task of watching monitors, when in fact the position entailed additional, more demanding responsibilities. Plaintiff's proffered description of her position as "security dispatcher" defined the following tasks: monitoring cameras, changing surveillance tapes, notifying police of security issues and recording officer movements. Tr. 175.

OPINION AND ORDER- 12

According to the DOT, the duties of a "surveillance system monitor" include: monitoring premises to detect crimes or disturbances, using closed circuit television monitors and notifying authorities of need for corrective action. DOT #372.176-010. The job described by plaintiff is nearly identical to the description of a "surveillance system monitor," thus the ALJ was correct in equating the two positions.

Plaintiff also contends that she was not employed as a security dispatcher for a period long enough to qualify as past relevant work. The DOT states that the specific vocational preparation (SVP) for a position such as a security dispatcher requires between one and two years to learn. *Id.* Plaintiff spent only three months as a security dispatcher for a private security company. Tr. 175. During the hearing on September 8, 2009, the ALJ asked plaintiff about the amount of time she spent as a security dispatcher and stated "we won't call that past relevant work." Tr. 67. In his decision, however, the ALJ inexplicably concluded that plaintiff's position did qualify as past relevant work. Tr. 66. This change of classification was in error.

### 6. ALJ's vocational hypothetical

Plaintiff next assigns error to the ALJ's hypothetical that was propounded to the VE. The ALJ described the plaintiff as an individual who "can lift 20 pounds occasionally, 10 pounds frequently, can sit six of eight hours, stand and walk for four of eight hours, but needs to make postural changes at will, occasional public conduct, a predictable and routine pace and needs to avoid environmental irritants." Tr. 68. Based on this hypothetical the VE surmised that the plaintiff could perform work as a surveillance system monitor or a small products assembler. *Id.*; *see supra* Part 5.

To meet his burden at step five of the sequential analysis, the Commissioner may rely on

OPINION AND ORDER- 13

the testimony of a VE. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (citation omitted). Therefore, the hypothetical questions that an ALJ poses to a VE must include all of the claimant's functional limitations, both physical and mental, that are supported by the record. *Thomas*, 278 F.3d at 956. If the hypothetical fails to take into account all of the claimant's limitations, it is defective and cannot provide substantial evidence for the ALJ's ultimate disability determination. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Here, the ALJ properly considered the testimony of the plaintiff, but did not have sufficient information to evaluate the limitations proposed by Dr. Bryan. Additionally, the ALJ improperly disregarded the opinion of Dr. Butler that plaintiff suffered from fibromyalgia and had limited physical capabilities. The RFC and hypothetical proposed by the ALJ did not incorporate plaintiff's potential psychological limitations in the workplace, nor did it include any of the fibromyalgia symptoms observed by plaintiff's doctors.

### 7. Remand

A remand for further proceedings is unnecessary if the record is fully developed, and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In this matter, this court concludes that outstanding issues remain that must be resolved before a determination of disability can be made.

Upon remand, the ALJ shall make further inquiry into plaintiff's psychological evaluation by Dr. Bryan, shall reconsider the testimony of lay witnesses Zumwalt and Miller, and shall

OPINION AND ORDER- 14

reassess the medical records of Drs. Butler and Melcher, addressing concerns about plaintiff's alleged fibromyalgia and ability to function. The ALJ shall then make adjustments to plaintiff's RFC accordingly. Plaintiff shall have the opportunity to submit additional medical evidence regarding her alleged disabilities.

**CONCLUSION**

For the reasons provided, this court concludes that pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner denying Diana Lynn May's application for DIB must be REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent with this ruling and the parameters provided herein.

IT IS SO ORDERED.

DATED this 25 day of June, 2012

                                                       Ancer L. Haggerty
                                             United States District Judge